# WHEELER v. UNITED STATES.
## PATTON v. SAME.

Nos. 9439, 9441.

United States Court of Appeals
District of Columbia.

Argued April 17, 1947.

Decided Nov. 3, 1947.
Writ of Certiorari Denied Feb. 2, 1948.
See 68 S.Ct. 448.

Mr. James J. Laughlin, of Washington, D. C., for appellant Reginald J. Wheeler.

Mr. Curtis P. Mitchell, of Washington, D. C., with whom Mr. Wesley S. Williams, of Washington, D. C., was on the brief, for appellant Jesse James Patton.

Mr. John D. Lane, Assistant United States Attorney, of Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, and Charles B. Murray, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee. Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

Before STEPHENS, CLARK and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

Jointly indicted under Title 22, § 2401, D.C.Code (1940),[1] Reginald J. Wheeler and Jesse James Patton were found guilty when tried together in the District Court of the United States for the District of Columbia. They appeal from the judgment sentencing them to death.

The facts reveal a wanton, cold-blooded murder. Two Negro men, bent on robbery, went into a drug store at the corner of 18th Street and Florida Avenue in the District of Columbia shortly before 11:00 o'clock on the morning of June 5, 1946. One stopped in the front of the store near the soda fountain, behind which were two women clerks. The other proceeded to the

---

[1] "Whoever, being of sound memory and discretion, kills another purposely, either of deliberate and premeditated malice or by means of poison, or in perpetrating or attempting to perperate any offense punishable by imprisonment in the penitentiary, or without purpose so to do kills another in perpetrating or attempting to perpetrate any arson, as defined in section 22—401 or 22—402 of this Code, rape, mayhem, robbery, or kidnaping, or in perpetrating or in attempting to perpetrate any housebreaking while armed with or using a dangerous weapon, is guilty of murder in the first degree."

prescription and liquor departments in the rear, where he pointed a revolver at Thomas F. Nusbickel, the pharmacist, and demanded to know the location of the safe. As Nusbickel protested, Maurice L. Bernstein, the proprietor, came up the steps from the basement. Turning from Nusbickel, the robber fired at Bernstein, killing him almost instantly. After rifling the cash register, he returned to the front of the store where his companion was restraining the fountain clerks and a small boy customer by menacing them with an automatic pistol. At the killer's suggestion, the other bandit demanded the contents of the fountain cash register and one of the women handed over the money. Both men then left the store.

The appellant Patton was arrested about 3:00 a. m. on Sunday, June 9th, but was not questioned about the crime until Monday, June 10th, at 7:00 p. m. Informed at that time by an officer that he was believed to have been implicated in the Bernstein murder, Patton said, "If a person goes into a place and holds it up, but is not the man who pulls the trigger, does that make him just as guilty as the one that does the shooting?" He was told that only the courts could answer that question. Thereupon Patton told the officers that he and Wheeler entered the store together for the purpose of robbing it. He had kept the two women and the boy at bay while Wheeler went to the back of the store. Patton heard a noise which he thought was a gunshot, after which Wheeler rejoined him and told him to get the money out of the fountain cash register. At his demand, one of the women handed the money to Wheeler. The two then went in a taxicab to 14th and Riggs Streets. After alighting, they divided the money and separated.

The two soda fountain clerks had been out of town over the week end and were not available until Monday night about midnight, some five hours after Patton's confession. At that time a police line-up was held in which the two clerks positively identified Patton as the man who had threatened them with a gun. Shortly thereafter Patton admitted to them and to Nusbickel that he and Wheeler had committed the crime, and related the details.

Wheeler was arrested by District of Columbia officers in a farmhouse in South Carolina about 4:40 a. m. on Thursday, June 13th. When the officers entered his room, Wheeler said, "How did you fellows know I was down here? Have you got Patton?" When he had been placed in the officers' automobile he found a Washington newspaper in which he read an account of the murder. He then said, "Patton is trying to put everything on me," and proceeded to tell the story of the crime, in the course of which he admitted that he had done the shooting. When Wheeler was arrested a revolver was found in his possession. A firearms' expert of the Federal Bureau of Investigation testified that the bullet which killed Bernstein had been fired from the revolver which Wheeler had at the time of his arrest. Both Wheeler and Patton signed written confessions.

At the trial, Wheeler denied having made any confession. His story was that Patton borrowed the revolver on the morning of June 5th, saying that he was going out to get some money, and that he returned it to him that afternoon. Wheeler claimed that at the time the crime was committed he was at his home at 434 Franklin Street, N. W. He was identified, however, by Nusbickel and the small boy who was the customer at the soda fountain. He was identified by the taxi driver in whose cab he and Patton had ridden immediately after the murder.

Patton's defense was that he first intended to participate in the robbery but changed his mind and withdrew from the enterprise. He testified, however, that he had held his gun on the three persons in the front of the store and had received a part of the proceeds of the crime.

### 1. Wheeler's assignment of errors.

Because this is a capital case, we have considered the entire record with unusual care, and shall discuss each of the alleged errors which Wheeler says entitle him to a reversal, despite the fact that in our view unquestionably competent evidence clearly proved his guilt, and despite the rule that "When guilt is clearly established by competent evidence, error in the admission or exclusion of other evidence or in

the charge to the jury which does not affect the substantial rights of the accused does not call for the reversal of a conviction." [2]

■ The first contention is that his motion for a severance was improperly denied. Its basis was "that defendant cannot obtain a fair and impartial trial since the codefendant has made admissions and confessions out of the presence and hearing of the defendant, and defendant would be seriously prejudiced if forced to go to trial with the codefendant." Patton's extrajudicial statements implicating Wheeler were admitted in evidence. Wheeler was not prejudiced thereby, however, for Patton's testimony from the witness stand, clearly admissible, was substantially to the same effect as his former statements with reference to Wheeler's participation in the the crime. Under almost identical circumstances we held in the Borum case [3] that an inadmissible confession by a codefendant was rendered innocuous when the confessing defendant reiterated his previous statement as he testified to the jury. The point is not pressed by Wheeler, who correctly concedes the general rule to be that persons jointly indicted should be tried together, and that granting separate trials is a matter of discretion. [4] It does not appear in this case that the trial judge abused his discretion by refusing to grant a severance.

Wheeler complains that the trial judge improperly restricted cross-examination, improperly interfered with his presentation of the case because he was convinced of the guilt of both defendants, improperly excluded evidence which was vital to him, and that the United States Attorney was guilty of impropriety in endeavoring to hamper a proper defense on behalf of the appellants.

We have examined the record with great care in considering these contentions and have found no basis to support them. As the Supreme Court of the United States said in Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 471, 86 L.Ed. 680, "We must guard against the magnification on appeal of instances which were of little importance in their setting."

■■ Wheeler also asserts that the trial judge was in error in denying "prayers" [5] requested by him. Without entering into a detailed discussion of the several instructions which Wheeler offered and which were refused, it is sufficient to say that the substance of all of them was amply covered by the trial justice in his charge to the jury. A defendant cannot insist that the jury be instructed in the exact language chosen by him. [6]

■ Wheeler's contention that the court erred, when summarizing the evidence, in placing undue emphasis on that of the prosecution and in minimizing the evidence of the appellant was adequately answered by the trial judge himself, who pointed out in reply to the same criticism of his charge that he had taken longer to summarize the evidence for the prosecution because it was more voluminous than that of the appellant. Wheeler does not claim that certain facts were "singled out" without consideration of other modifying facts, as was the case in Meadows v. United States, 65 App.D.C. 275, 82 F.2d 881.

■ Wheeler's final assignment of error is that his motion for a mental examination should have been granted. Suffice it to say that Wheeler did not make the prima facie showing of mental incapacity which is necessary to require the court to order a complete mental examination. [7]

[2] Guy v. United States, 71 App.D.C. 89, 107 F.2d 288, 290, and numerous authorities there cited, certiorari denied, 1939, 308 U.S. 618, 60 S.Ct. 296, 84 L.Ed. 516.

[3] Borum v. United States, 61 App.D.C. 4, 56 F.2d 301, certiorari denied sub nom., Logan v. United States, 1932, 285 U.S. 555, 52 S.Ct. 459, 76 L.Ed. 944.

[4] Lucas v. United States, 70 App.D.C. 92, 104 F.2d 225.

[5] This word is in general use in the District of Columbia to indicate instructions which are offered and requested by a party to an action.

[6] Agnew v. United States, 165 U.S. 36, at 51, 17 S.Ct. 235, 41 L.Ed. 624; Arnstein v. United States, 54 App.D.C. 199, 296 F. 946, certiorari denied, 1924, 264 U.S. 595, 44 S.Ct. 454, 68 L.Ed. 867; Bishop v. United States, 71 App.D.C. 132, 107 F.2d 297.

[7] D.C.Code § 24—301 (1940); Neely v. United States, 80 U.S.App.D.C. 187, 150 F.2d 977, certiorari denied, 1945, 326 U.S. 768, 66 S.Ct. 166, 90 L.Ed. 463.

The judgment against Wheeler must be and is affirmed.

### 2. *Patton's assignment of errors.*

Several of the reasons for reversal offered by Patton are identical with those relied on by Wheeler. We shall discuss only the points made by Patton which were not suggested by Wheeler and therefore were not disposed of in the earlier portion of this opinion.

 Patton complains that the court erred in refusing to instruct the jury that two separate offenses of robbery were charged and proved. In so doing he overlooks the following portion of the judge's charge to the jury: "Counsel for the defendant Patton urges that at best the two robberies were not a single joint enterprise and that, therefore, the killing of Bernstein was committed in the perpetration of a robbery in the rear of the store and constituted no part of the robbery in the front of the store. If you find that the two robberies were separate and distinct and that they were not a single joint enterprise and that Patton did not assist or aid Wheeler in perpetrating the robbery which the latter committed then, of course, you should bring in a verdict of not guilty as to Patton."

The illegal enterprise entered upon and performed that morning by Wheeler and Patton was a single joint venture, and to say that two separate and distinct robberies were committed because there was a slight interval between the taking of the money from the register in the rear and that in the front is specious indeed. The portion of the judge's charge to the jury just quoted was more favorable to Patton than he deserved. For the same reason, Patton was not entitled to have the jury told that he could be convicted of being an accessory after the fact.

Patton argues also that the jury should have been instructed that he could be found guilty of robbery only, an offense which he claims is included in the crime charged in the indictment and that this was justified by the fact that he participated only in what he calls "the second robbery," in the course of which the murder was not committed. We do not agree. As we have seen, the robbery of the fountain cash register was simply a part of the general holdup of the store, in the perpetration of which Bernstein was murdered. As the statute plainly shows, the crime which it denounces is murder committed during the perpetration of a robbery. The fact that a robbery was in progress is simply the element of proof which is necessary in order to convert the killing, done incidentally in the course of the robbery, into first degree murder. In other words, one who kills as he robs is charged by the statute with having that degree of malice which is indispensable to murder in the first degree.

 Other grounds for reversal assigned by Patton alone are that the court erred in denying his motion to dismiss at the end of the government's evidence and at the close of all the evidence, and in denying his motion for acquittal on the ground that the verdict was contrary to the weight of the evidence and contrary to law. It is enough to say in answer to these contentions that the proof against Patton was overwhelming.

 He complains also that the court erred in allowing the jury to separate during the course of the trial. Whether to keep the jury together in the trial of a capital case is discretionary in this jurisdiction. The court's action in that respect will not be reviewed unless it appears affirmatively that prejudice resulted to the defendant. Brown v. United States, 69 App.D.C. 96, 99 F.2d 131. Here there was neither showing nor intimation of prejudice as a result of the separation of the jury which was permitted.

 It remains only to consider Patton's claim that the court erred in permitting his written confession to be received in evidence when, as he says, "it clearly appeared that the said statement had been obtained through force, coercion and intimidation." When the confession was offered by the prosecution and the appellant Patton objected to its introduction, the court heard evidence, out of the presence of the jury, as to whether the confession had been voluntarily or involuntarily made. Patton testified that he had been beaten and otherwise misused and that he signed the

confession as a result of that treatment. The officers stoutly denied having mistreated him in any manner and a physical examination made on Tuesday morning, after he had confessed on Monday night, did not reveal any marks or welts on his body. The trial judge concluded that the statement was voluntary and permitted it to go to the jury, but he did not submit to that body the question whether the confession was voluntarily made. His reason for not doing so, as required by the rule which is set out and supported by ample authority in the McAffee case,[8] was stated by him as being the abandonment by Patton of his claim that his confession was coerced. There is ample basis in the record for this conclusion by the trial judge. For, when the confession was offered and received in evidence and a prima facie showing of its voluntary nature was made to the jury by witnesses for the prosecution, Patton's counsel did not object to its admission and offered no evidence[9] that it had been involuntarily given. On the contrary, in his argument he relied upon it as tending to mitigate Patton's criminal conduct. But even if it be said that Patton's contention that his confession was forced from him was not abandoned, so that it was error not to submit to the jury the question whether he had voluntarily confessed, the error was rendered harmless by the fact that he took the stand in his own behalf at the trial in November, some five months later than the date of the confession which he said was extorted from him by violence, and of his own accord told the jury the story of what happened in the drug store on the morning of June 5th, in all essential respects as it was told in the confession.

The Supreme Court of the United States quite recently has had occasion to discuss a somewhat similar situation. In United States v. Bayer, et al., 331 U.S. 532, 67 S.Ct. 1394, one of the defendants, a soldier, was arrested and confined for a period of months. He was denied callers, communications, comforts and other facilities. Charges for court martial were not promptly served on him, nor was he taken before a magistrate for arraignment for any charges preferred by civil authorities. Military charges were finally served on him approximately nine months after he was arrested. He made a confession, while under the described restraint, less than a month after his arrest. The court assumed that confession to be inadmissible under the rule of the McNabb case, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 and of Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829. But a second confession was made some seven months after the arrest, when the accused was only under "administrative restraint," which meant that he could not leave the limits of the military base at which he was stationed. The Court of Appeals held that the second confession was "patently the fruit of the earlier one" and therefore equally inadmissible, but the Supreme Court disagreed, saying, [331 U.S. 532, 67 S.Ct. 1398] "But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed. * * * The second confession in this case was made six months after the first. The only restraint under which Radovich labored was that he could not leave the base limits without permission. Certainly such a limitation on the freedom of one in the Army and subject to military discipline is not enough to make a confession voluntarily given after fair warning invalid as evidence against him. We hold the admission of the confession was not error."

The Supreme Court said in Motes v. United States, 178 U.S. 458, 476, 20 S.Ct. 993, 1000, 44 L.Ed. 1150, "It would be trifling with the administration of the criminal law to award him a new trial because of a particular error committed by the trial court, when in effect he has stated under oath that he was guilty of the charge preferred against him." This language applies with equal force to Patton.

 It is true that in holding Patton from 3:00 o'clock Sunday morning until

---

8 McAffee v. United States, 70 App.D.C. 142, 105 F.2d 21.

9 Cf. Brady v. United States, 1 App.D. C. 246, 250.

Tuesday without taking him to the nearest available commissioner, the officers violated Federal Criminal Rule 5(a), 18 U.S.C.A. following section 687. Patton relies upon the following cases as showing that, on that account, he is entitled to a reversal: McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; White v. Texas, 310 U.S. 530, 60 S.Ct. 1032, 84 L.Ed. 1342; Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Ziang Sun Wan v. United States, 266 U.S. 1, 45 S.Ct. 1, 69 L.Ed. 131; and Akowskey v. United States, 81 U.S.App.D. C. 353, 158 F.2d 649. Those authorities do not help him, as the facts of this case render them inapplicable. While the officers acted wrongfully in failing to present Patton to a commissioner more quickly than they did, it does not appear that the delay induced the confession which he made Monday night.

The judgment against Patton is also affirmed.

Affirmed.