**UNITED STATES of America,**

v.

Sidney STEIN, James E. Jackson, Fred Fine, Alexander Trachtenberg, Marion Bachrach, William Norman Marron and George Blake Charney, Defendants.

United States District Court
S. D. New York.

April 9, 1956.

ingly conspired with each other, with twelve named co-conspirators and with divers other persons to the Grand Jury unknown, "(1) unlawfully, wilfully, and knowingly, to advocate and teach the duty and necessity of overthrowing and destroying the Government of the United States by force and violence; and (2) unlawfully, wilfully, and knowingly, to organize and help to organize as the Communist Party of the United States a society, group and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence."

Fifteen of the defendants stood trial; two were acquitted by direction of the Court at the close of the Government's case, the remaining thirteen were found guilty. The judgments of conviction were affirmed. United States v. Flynn, 2 Cir., 1954, 216 F.2d 354, certiorari denied 1955, 348 U.S. 909, 75 S.Ct. 295, 99 L.Ed. 713, rehearing denied 1955, 348 U. S. 956, 75 S.Ct. 436, 99 L.Ed. 747.

Paul W. Williams, U. S. Atty., New York City, for plaintiff. Thomas B. Gilchrist, Jr., Chief Asst. U. S. Atty., John J. Keating, Jr., Asst. U. S. Atty., Morton S. Robson, Asst. U. S. Atty., New York City, of counsel.

Royal W. France, New York City, for defendant Sidney Stein.

Newman Levy and Mary Kaufman, New York City, for defendants Alexander Trachtenberg and George Blake Charney.

Vincent Hallinan, San Francisco, Cal., for defendant Marion Bachrach.

John M. Minton, New York City, for defendants William Norman Marron and Fred Fine. Arnold C. Sayer, New York City, of counsel.

Charles T. Duncan and Frank Reeves, Washington, D. C., for defendant James E. Jackson.

BICKS, District Judge.

On June 20, 1951, the Grand Jury returned an indictment charging that the twenty-one persons named therein as defendants unlawfully, wilfully and know-

A new trial was ordered as to defendants Alexander Trachtenberg and George Blake Charney on the ground that the jury might have acquitted them but for certain testimony later discovered to be perjurious. Four of the defendants, Sidney Stein, Fred Fine, James E. Jackson and William Norman Marron, were not available at the trial. They have since either been apprehended or surrendered.

The Government is now moving on the trial of the four formerly absent defendants, the two defendants as to whom a new trial was ordered and a seventh defendant, Marion Bachrach, who obtained a severance during the course of the first trial because of ill health.

Six pretrial motions heretofore brought on by the defendant Stein were decided by this Court on July 26, 1955. United States v. Stein, D.C., 18 F.R.D. 17. The Court has since been presented with the following additional motions:

(1) A motion by the defendant Marion Bachrach to dismiss the indictment as to her on the grounds that: (i) She has already been acquitted of all the charges

contained in the indictment; (ii) she has already been in jeopardy upon all of said charges; and (iii) the ·prosecution as to her has heretofore been abandoned and discontinued by the Government.

During the course of the first trial the Court was advised that Marion Bachrach was seriously ill and in need of immediate hospitalization. A Court appointed physician reported that she required an "extensive, major operation" which would necessitate three to four weeks in a hospital and a period of convalescence of about three months. The following colloquy then ensued:

"The Court: * * * Under the circumstances, what do you think ought to be done?

"Mr. Wright (Counsel for Mrs. Bachrach): Well, we have pending before you now a motion for severance, and it was pending before the Court appointed the physician. In view of that I would think it would be necessary for your Honor to rule on that, taking this (the physician's report) into account.

"The Court: What is the position of the Government with respect to the motion?

"Mr. Marks: In view of this report, your Honor, the Government consents to the defendants' [sic] motion for a severance.

"The Court: And the order of the Court is that the prosecution against the defendant Marion Bachrach is severed, and the prosecution of the remaining defendants will proceed and the proceedings heretofore taken will stand as the proceedings in the presecution against the remaining defendants.

"Mr. Wright. Your Honor, in that connection I wonder if your Honor would also in the present direction [sic] continue the present bail.

"The Court: Yes. Bail will be continued."

It is urged that placing her on trial now constitutes double jeopardy in violation of her Fifth Amendment rights.

 It is clear that the Court had the right to discharge the jury when it was informed of Mrs. Bachrach's condition. As Mr. Justice Story said:

"* * * * the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." United States v. Perez, 1824, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165. See Wade v. Hunter, 1948, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974.

See also Himmelfarb v. United States, 9 Cir., 1949, 175 F.2d 924, certiorari denied 1949, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527; United States v. Potash, 2 Cir., 1941, 118 F.2d 54, certiorari denied 1941, 313 U.S. 584, 61 S.Ct. 1103, 85 L. Ed. 1540.

 The defendant does not argue to the contrary, but contends that the granting of her motion for a "severance" did not have the effect of annulling the jeopardy which had theretofore attached. She urges such effect could result only if a mistrial had been ordered. This contention is without merit. There is no magic in the word "mistrial". It was on her motion that the severance was granted and the intention both of her counsel and the Court to discharge the jury as to her is unmistakable from the record. Her attempt to obtain immunity because of the alleged lack of technical precision of her own counsel smacks almost of entrapment. She obtained exactly the end result she sought—relief from proceeding with the trial in order to submit to immediate surgery. Whatever jeopardy she had been subjected to at that time, she effectively annulled. The suggestion that the severance was tantamount to an acquittal is patently

unsound. However high the tender regard for the rights of a person charged with crime, mere semantics cannot be availed of to confer a right neither sought nor intended to be obtained or granted.

■ Her contention that the prosecution has been discontinued and abandoned likewise is lacking in merit. It was not until February 28, 1955 that the judgments of conviction of the defendants against whom the trial continued were finally affirmed. Since then the Government has proceeded with reasonable alacrity. Motion denied.

(2) A motion by the defendant Marion Bachrach for a continuance or, in the alternative, a severance on the ground that her health will be seriously impaired if she is required to stand trial at this time.

■ With the consent of her counsel and the United States Attorney, the Court appointed an eminent physician to examine her. The physician was requested to give his opinion whether (i) her daily presence during regular court hours at a trial which may extend over a period of months will have a more deleterious effect on her health than it would on a person enjoying normal health, and (ii) in view of the type of surgery she was subjected to, it was reasonable to anticipate that embarrassing incidents might occur to her in the court room. The reply to each inquiry was in the negative. Accordingly, the motion is denied.

■ (3) A motion by defendants Trachtenberg and Charney under Rule 17(c) of the F.R.Cr.P., 18 U.S.C.A. to compel pre-trial production of all books, pamphlets, documents and papers presented to the Grand Jury or to be offered in evidence at the trial. This motion is granted to the same extent as was the motion heretofore made by defendant Stein for similar relief. See United States v. Stein, supra.

(4) A motion by defendants Trachtenberg and Charney under Rule 14 of the F.R.Cr.P. to be severed from the trial of the defendant Stein. This motion will be discussed together with Motion No. 5.

(5) A motion by defendant Stein under Rule 14 of the F.R.Cr.P. to be severed from the trial of the defendants Trachtenberg and Charney.

Stein had not been apprehended when the first trial took place. Trachtenberg and Charney stood trial, were convicted and their convictions set aside. They assert that a trial with their alleged co-conspirator Stein will be prejudicial to them because they anticipate that the Government will argue to the jury that an unfavorable inference should be drawn from Stein's alleged flight. They are apprehensive that the jury may overlook the Court's instructions to disregard evidence of Stein's alleged flight in passing upon their individual guilt or innocence.

Stein contends it will be impossible to impanel a jury which has not heard of the convictions of Trachtenberg and Charney at the first trial, such knowledge will necessarily operate to the prejudice of Trachtenberg and Charney, and inevitably that prejudice will spill over to his detriment.

■■ An application for a severance is, in effect, an invocation of the right to a trial by an impartial jury guaranteed by the Sixth Amendment. The granting of separate trials to persons jointly indicted is a matter of discretion. Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101; Stilson v. United States, 1919, 250 U.S. 583, 40 S. Ct. 28, 63 L.Ed. 1154; Maupin v. United States, 10 Cir., 1955, 225 F.2d 680; Hall v. United States, 1955, 83 U.S.App.D.C. 166, 168 F.2d 161, 4 A.L.R.2d 1193, certiorari denied 1948, 334 U.S. 853, 68 S. Ct. 1509, 92 L.Ed. 1775; Wheeler v. United States, 1947, 82 U.S.App.D.C. 363, 165 F.2d 225, certiorari denied Patton v. United States, 1948, 333 U.S. 830, 68 S.Ct. 448, 92 L.Ed. 1115; Lucas v. United States, 1939, 70 App.D.C. 92, 104 F.2d 225.

■ None of the many cases on this subject which has come to the attention of the Court attempts to delineate the

766

area of discretion nor to outline the boundaries of sound discretion which the Court should exercise. The exercise of a sound discretion on such an application involves evaluating the prejudice claimed by both the defendant and the Government in light of the facts of the particular case and the climate in which it is to be tried.

 It would be unrealistic to dismiss lightly the prospect that the jury may fail to completely segregate the applicable testimony among the defendants in accordance with the Court's charge. See United States v. Delli Paoli, 2 Cir., 1956, 229 F.2d 319, certiorari granted 1956, 350 U.S. 992, 76 S.Ct. 544. It is hoped, however, that the instructions to the jury will be sufficiently explicit to minimize that possibility as much as can be. The prejudice, if any, which remains after appropriate instructions to the jury must be accepted as inevitable. Absolute justice is an abstraction always to be sought after but perforce it must give way at times to the necessities of its orderly administration. Cf. United States v. Flynn, supra, 216 F.2d at page 376; United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, affirmed 1950, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, rehearing denied 1951, 342 U.S. 842, 72 S.Ct. 20, 96 L.Ed. 636. The first trial extended over a period of approximately nine months. Without attempting to prognosticate the exact length of the second trial it is fair to assume that it will be relatively long. It is also a fair assumption that many of the witnesses will give testimony relating to all of the defendants and that numerous legal problems will arise common to all of them. With a due regard for the primacy of safeguarding the rights of the individual charged with crime, the Court is of the view that under the circumstances in this case a severance is not warranted. Motions 4 and 5 are denied.

 (6) A motion by the defendants Trachtenberg and Charney for a postponement of the trial until the Supreme Court announces its decisions in Yates v. United States, 9 Cir., 1955, 225 F.2d 146, certiorari granted 1955, 350 U.S. 860, 76 S.Ct. 104, and Mesarosh v. United States, 3 Cir., 1955, 223 F.2d 449, certiorari granted 1955, 350 U.S. 922, 76 S.Ct. 218. The briefs of petitioners in support of the applications for said writs of certiorari appear to pose problems which may very well arise upon the trial herein. Since, in addition, said cases are the first arising under the Smith Act, 18 U.S.C.A. § 2385, in which the Supreme Court has granted unlimited certiorari, the Court would be inclined to grant the continuance. However, argument in said cases has been set for the October 1956 term, and, while of course it is idle to conjecture, it is within the realm of probability that, allowing for the time which will necessarily elapse until the cases are reached for argument and the time between argument and announcement of the decisions, close to one year from the trial date now fixed will have gone by. Furthermore, the Government has made representations to the Court that the delay might prove seriously prejudicial to it, because, among other reasons, several of its witnesses are advanced in years and others infirm. Under the circumstances the Court is constrained to deny the motion.

 (7) A motion by the defendant James E. Jackson for a severance from the trial of the other defendants on the ground that his rights will be substantially prejudiced if he is tried with the other defendants on March 12, 1956, the date on which the trial is scheduled to commence. Counsel conceded upon the argument that while the motion is nominally for a severance, the relief sought is a continuance and the motion will be so treated. Since at the time this motion was argued counsel had but recently been retained, the motion was granted and the trial postponed to April 9, 1956.

 (8) A motion by the defendants Trachtenberg and Charney which, as modified upon the argument, is for an inspection of the Grand Jury minutes by the Court and a dismissal of the indict-

ment on the ground that no evidence against them was presented to the Grand Jury upon which to base the indictment. This is more than the usual motion to inspect Grand Jury minutes made by a defendant who asserts his innocence and uses that as a predicate for an allegation either that the testimony before the Grand Jury was insufficient or that no testimony whatever connecting him with the commission of the crime was presented. Movants urge (i) it is reasonable to assume that all the evidence presented to the Grand Jury was offered at the first trial, (ii) that, with the exception of the testimony of the witness Matusow, who, it is conceded, did not appear before the Grand Jury, no evidence was presented at the first trial bearing on their personal intent to commit the crime charged in the indictment. During the pendency of this motion the Supreme Court handed down its decision in Costello v. United States, 350 U.S. 359, 76 S.Ct. 406. This case teaches that in determining whether an indictment is sufficient to call for a trial on the merits, we are only to inquire, is the indictment valid on its face, and, was it returned by a legally constituted and unbiased Grand Jury. It is not intimated on this motion that the indictment is invalid on its face or that the Grand Jury was either illegally constituted or biased. Accordingly, the motion is denied. Costello v. United States, supra; United States v. Garsson, D.C.S. D.N.Y.1923, 291 F. 646.

■■■ (9) A motion by the defendant Sidney Stein to dismiss the indictment as to him on the ground, as stated in the moving papers, that a "trial of the indictment herein constitutes placing the said defendant in double jeopardy". He urges that his conviction in the United States District Court for the Northern District of California for assisting Robert G. Thompson, one of the defendants convicted in United States v. Dennis, supra, in order to prevent his punishment, 18 U.S.C.A. § 3 and for conspiring to

violate said section, 18 U.S.C.A. § 371, bars prosecution under the instant indictment which charges him with conspiring to violate the Smith Act, 18 U. S.C.A. § 2385. The defendant recognizes that neither of the offenses for which he was convicted is the same as the one charged to him in the indictment pending in this Court. This effectively disposes of the plea of double jeopardy. Burton v. United States, 1906, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057; Bartlett v. United States, 10 Cir., 1948, 166 F.2d 928; Pollock v. United States, 4 Cir., 1929, 35 F.2d 174.

■■■ Pointing out that the offense laid to him in California was that he acted as an accessory after the fact to a felony committed by Thompson, and that said felony is the same one charged in the indictment in this Court, he urges that as a principal to that felony he could not afterward become an accessory after the fact thereto. Without stopping to consider the merits of this contention, it does not appear to have been raised on the appeal from the California conviction. It was in that forum that he was convicted as an accessory and having failed to raise the matter there, it may be deemed to have been put to rest. The issue here is not the validity of the conviction in California but rather, valid or invalid, can it be availed of as a basis for a plea of double jeopardy to the indictment in this Court. The answer is in the negative. See cases cited supra. Motion denied.

(10) and (11) A motion by defendants Trachtenberg and Charney and a motion by the defendant Stein to dismiss the indictment upon constitutional and other grounds.[1]

Each of the contentions advanced on said motions has previously been considered and rejected either in this case or in other cases under the Smith Act. See United States v. Dennis, supra; United States v. Flynn, supra; Yates v. United States, supra; Mesarosh v. Unit-

---

**1.** The grounds enumerated in the notice of motion are set out at length in the Appendix attached hereto.

768

ed States, supra; United States v. Stein, supra; Frankfeld v. United States, 4 Cir., 1952, 198 F.2d 679; United States v. Wellman, 6 Cir., 1955, 227 F.2d 757; United States v. Fujimoto, D.C.D.Hawaii 1952, 102 F.Supp. 890; United States v. Silverman, D.C.D.Conn.1955, 129 F. Supp. 496. In view of these decisions, further discussion at the District Court level is not indicated. Motions denied.

 (12) A motion by all the defendants for a continuance on the ground that an event occurred on March 27, 1956, which created "such a hostile atmosphere that * * * it is impossible for the defendants to get a fair and impartial jury at this time."

Some six months prior to said date the Internal Revenue Bureau of the Treasury Department initiated a routine tax investigation of Publishers New Press, Inc., the publishers of a paper known as the Daily Worker, and The Worker, and of The Communist Party, USA. This investigation led the treasury agents in charge to believe that income tax deficiencies existed and that the proper protection of the United States revenues required distraint upon the assets of the alleged delinquent taxpayer. Accordingly, on March 27, 1956 the property of these organizations was distrained by means of lien and levy. This seizure did not go unnoticed. It was headlined in the daily newspapers in New York City and elsewhere and received extensive radio and television coverage for several days. The publicity related to the Communist Party and the publishers of the Daily Worker and to their respective tax difficulties. Except in an insignificant way, there was neither reference to nor mention of the impending trial or any of the defendants.

Delaney v. United States, 1 Cir., 1952, 199 F.2d 107, 39 A.L.R.2d 1300, relied on by the defendants, is clearly distinguishable. There the publicity was directed to the defendant specifically and to the offense for which he was about to be tried. In practical effect the case against him was pretried in the public press.

See United States v. Mesarosh, supra, 223 F.2d at page 458; United States v. Flynn, supra, 216 F.2d at page 375.

The prejudice, if any, against the Communist Party and the Daily Worker, engendered by the publicity complained of here, is, of course, not ascertainable. To the extent that it may be gauged by editorial comment it would appear that there is less than unanimity on whether the alleged delinquent taxpayers or the Tax Collector emerged from the incident the more scathed. The public feeling against Communists was not significantly, if at all, added to or altered by the incident and the attendant publicity.

 Two additional grounds were urged for the granting of the motion, viz.: that by reason of the occurrence defendants were denied access to their files and, unless they had access thereto, they would be seriously hampered in their preparation for trial, and further, that agents of the Government may have examined files, characterized by the defendants as confidential, which were located on the premises of the Communist Party. The motion was argued on Friday, March 30th. On the succeeding Monday, April 2nd, defendants' counsel obtained access to the files. As to the remaining ground, defendants' counsel, with commendable candor, stated that he had no facts to substantiate it. The Court directed him to examine the files and to report back his views on whether the Government agents had invaded any of the defendants' confidential material. On April 2nd, defense counsel reported to the Court via telephone that there was no indication that any of their files were missing, that from appearances alone it was difficult to tell whether the files had been examined, that counsel cannot infer that the files had been examined and, therefore, does not urge the Court to do so. Under the circumstances, this inquiry is not pursued further. It is not necessary, therefore, to discuss the affidavits in opposition submitted by the Government beyond noting that the defendants' suggestions with respect to

invasion of their confidential files are emphatically and categorically denied. Motion denied.

### Appendix

1. The Smith Act, 18 U.S.C.A. § 2385, under which the indictment is brought, is unconstitutional both on its face and as sought to be applied against these defendants in that:

(a) The Smith Act is contrary to and in violation of the First Amendment to the Constitution of the United States, particularly with respect to the following but not limited thereto:

(1) Said Act abridges the constitutional rights of free speech, of freedom of the press and of the people peaceably to assemble, and petition the Government for redress of grievances.

(2) Said Act purports to apply to all persons at all times and places, and under all conditions. It is patently unconstitutional as applied to situations where the conduct of the defendants does not represent a clear and present danger of achieving an evil which the Congress has the power to prevent. Such clear and present danger required to sustain the statute is not present in this case.

(b) The Smith Act is contrary to and in violation of the Fifth Amendment to the Constitution of the United States, particularly with respect to the following but not limited thereto:

(1) Said Act is vague, indefinite and uncertain.

(2) Said Act fails to apprise the defendants of the nature of the acts declared unlawful.

(c) The Smith Act is contrary to and in violation of the Sixth Amendment to the Constitution of the United States in that it is vague, indefinite and uncertain, and defendants who are alleged to have conspired to violate said Act cannot properly be informed of the nature and cause of the accusation.

(d) The Smith Act purports to be in the exercise of powers not delegated by the Constitution to Congress but which powers are expressly reserved to the people by the Ninth and Tenth Amendments to the Constitution of the United States.

(2) That the Smith Act, 18 U.S.C.A. § 2385, under which these defendants were indicted has been repealed by the enactment and approval on August 24, 1954 of the Communist Control Act, Public Law No. 637, Ch. 886, 83rd Cong., 2nd Sess., 50 U.S.C.A. § 782 et seq.

(3) That the Smith Act, if not repealed, has been so amended by the Communist Control Act as to make it unconstitutional both on its face and as applied herein in that:

(a) it violates the prohibitions of the Constitution of the United States against bills of attainder;

(b) it deprives the defendants of their rights to liberty without due process of law, in violation of the Fifth Amendment of the Constitution of the United States, in that among other things, it withdraws from the jury the power to make findings of fact as to basic elements of the offense charged, and denies to the defendants the right and freedom to prepare their defense, to gather evidence from third persons, to confer with and question possible witnesses or other persons concerning the facts in issue, and to obtain persons willing to testify as witnesses on their behalf, by penalizing such actions by the defendants and others;

(c) it penalizes and deprives the defendants of their right to counsel, in violation of the Sixth Amendment to the Constitution of the United States, and for such other, further and different relief as to this Court may seem just and proper.

(4) For the reasons stated in the foregoing paragraph 1, which reasons are incorporated herein by reference, the General Conspiracy Statute, 18 U.S.C.A. § 371, under which this indictment is brought, is unconstitutional as sought to be applied against these defendants.

(5) The indictment herein is unlawful and fails to state an offense under the

laws of the United States, with respect to the following but not limited thereto:

(a) Said indictment violates the rights of these defendants under the Constitution of the United States in that:

(1) Said indictment abridges and violates the specific guarantees of the rights of freedom of speech, freedom of press and freedom of assembly and petition protected by the First Amendment of the Constitution of the United States by setting up a standard of guilt in violation thereof.

(2) Said indictment deprives these defendants of their liberty without due process of law in that it is vague and indefinite and fails to apprise the defendants of the nature of the acts alleged to be unlawful, all in violation of the Fifth Amendment of the Constitution of the United States.

(3) Said indictment fails to state all the necessary elements of the crime it purports to charge and thus deprives these defendants of their right to be informed of the nature and cause of the accusation within the meaning of the Sixth Amendment of the Constitution of the United States.

(4) Said indictment purports to be an exercise of powers not delegated by the Constitution of the United States but reserved to the people thereof by the Ninth and Tenth Amendments to the Constitution.

(5) Said indictment fails to allege that either the conduct of the defendants or the situation at the times complained of or both constituted a clear and present danger that the government of the United States would be overthrown by force and violence or that an attempt to do so would be made.

(6) Said indictment is insufficient because of the fact that at the time it was filed on June 21, 1951 there did not exist the clear and present danger (either because of the general situation or the conduct of the defendants) that the activities of the defendants complained of would give rise to any situation concerning which the Congress of the United States has power to act in limitation of rights guaranteed by the Bill of Rights to the Constitution.

(b) Said indictment is based upon acts which occurred more than three years prior to the date the indictment was filed and which are accordingly barred by the statute of limitations.

(c) Said indictment fails to allege the specific intent of these defendants to perform the unlawful acts of which complaint is made.

(d) Said indictment is based upon statutes which had been repealed and were no longer law at the time of the indictment, and which had not been law for a period of more than three years prior to the time of the indictment, e. g., 18 U.S.C. §§ 10, 11.

(e) Said indictment charges no offense because it is in conflict with and has been nullified and in effect repealed by P.L. 831, cited as the Internal Security Act of 1950, Sec. 4(f), 50 U.S.C.A. § 783(f) providing that neither the holding of office nor membership in any Communist organization shall constitute per se a violation of any criminal statute.