182 So.2d 877

**Joseph P. CORNELISON**

v.

**STATE.**

I Div. 299.

Supreme Court of Alabama.

Feb. 10, 1966.

M. A. Marsal, Mobile, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

HARWOOD, Justice.

Joseph P. Cornelison was tried below on an indictment charging murder in the first degree. The jury returned the verdict of guilty of murder in the first degree and fixed his punishment as life imprisonment.

The judgment was entered pursuant to the verdict of the jury. This is an appeal from that judgment.

Cornelison's own testimony presents a bizarre picture of criminal actions by a group making their headquarters largely in Saraland, a small town a few miles north of Mobile, Alabama.

The trial tactics employed below by the defense would seem to be analogous to a plea of confession and avoidance sometimes used in civil cases. In the trial below Cornelison fully confessed the crime with which he was charged, but sought to avoid or mitigate his punishment under a claim that he was compelled to commit this crime through fear of his criminal associates.

In view of the overwhelming evidence in the hands of the state, including three confessions by Cornelison, the direction taken by the defense in the trial below would seem to have been efficacious since the death penalty was not imposed.

The testimony of the appellant, Cornelison, in the trial below was to the effect that he and one M entered into a partnership bonding business in Saraland. Another man, G, was a frequent visitor at the bond business office, as was William H. Stewart, Jr., the victim killed by Cornelison. After a few months M and G proposed to Cornelison that he and Stewart burn some houses for the purpose of collecting the insurance. In one of the attempts at arson Stewart bungled the job. Thereafter Stewart entered a Veterans Hospital in Dallas, Texas, and was there visited by Dudley McFayden, an investigator for the Mobile Sheriff's Department. According to the appellant, G and M became fearful that Stewart may have disclosed facts to McFayden concerning not only the burning of houses but two murders in which the appellant contended G and M were involved. G and M prevailed upon the appellant to drive to Dallas and bring Stewart back to Saraland.

After Stewart's return to Saraland he was involved in an attempt to burn another house, but his attempt proved unsuccessful. G and M then told appellant that Stewart would have to be gotten rid of. After considerable discussion it was decided that the appellant would be the one to do away with Stewart.

Looking toward the elimination of Stewart, the appellant persuaded him to accompany him to Dothan allegedly to rob a safe. The trip to Dothan was made but the appellant testified that he just couldn't kill Stewart on this trip. Stewart then had some business in Pensacola, Florida, and left Saraland for a few days. Before going to Pensacola, however, Stewart left his pistol in the bonding company office. According to the appellant, G took the pistol to the gunsmith and had it fixed so that it could not fire. After his return Stewart repossessed his defective pistol.

G, M, and the appellant then entered into a plan to burn the home of a woman whom we shall here call Mary. This was with the full cooperation of Mary. The appellant and Stewart moved the furniture from Mary's house to a house owned by appellant in order to save it from the contemplated fire. When her house was not burned Mary became impatient and threatened to have Stewart and appellant arrested for larceny of her furniture. The gang then decided it was essential to do away with Mary.

The plan to do away with Stewart was also in effect. The appellant and Stewart went into the area of Hog Bayou in Mobile County supposedly to find a suitable place to dispose of Mary's body when they killed her. The appellant testified that actually he lured Stewart on this trip in order to kill him. On the trip to Hog Bayou the appellant carried a shotgun loaded with buckshot. Stewart carried his defective pistol. The trip was made at night. The appellant testified he had difficulty in making up his mind to kill Stewart and they walked further and further into the wild area near the Bayou. On the pretext that he had heard someone, the appellant walked off a short distance and when he returned in Stewart's direction he fired his shotgun at Stewart when he was from 15 to 18 feet away. Stewart fell backwards and the appellant then pushed his body into Hog Bayou where it was found some days later.

The appellant was later arrested in Choctaw County, Alabama, on another offense and placed in the Choctaw County jail. While so incarcerated, proceedings were instituted looking toward the revocation of two suspended sentences of five years each imposed upon the appellant in prior cases of forgery in the first degree. The suspension of execution in these sentences was revoked, and the appellant was returned to the Choctaw County jail.

While in the Choctaw County jail, the appellant informed the sheriff of Choctaw County, and the District Attorney, that he would like to be taken to Mobile County in order that he might make a statement to the sheriff of Mobile County. Such statement, the appellant said, would be of in-

terest to the sheriff of Mobile County and to the citizens of the State of Alabama.

Thereafter the sheriff of Choctaw County and the District Attorney drove the appellant to Mobile. Before going to the sheriff's office the appellant, at his request, was taken to his attorney's office. Here he had a lengthy conference with his attorney. Thereafter the appellant was taken to the sheriff's office where he confessed to killing Stewart. In this first confession the appellant claimed that Stewart had presented his pistol at him when he walked toward him at the Bayou. However, in his second confession he stated that this part of his first confession was untrue and Stewart had not pulled a pistol on him. On the witness stand the appellant reiterated that Stewart had at no time pulled a pistol on him and that he knew the pistol could not be fired in any event.

During his testimony the appellant disavowed any possibility of self defense, and stated, "I've not asked for one thing. I have not asked for no pity whatsoever for taking the man's life."

The appellant further testified that during his incarceration in the Choctaw County jail, his conscience began bothering him; he began to be fearful of the lives of the members of his family, and of the lives of "other innocent people." He determined that he must eradicate the evil operations of his former criminal associates, and therefore made up his mind to cooperate fully with the law enforcement officials.

We have not set out all of the ramifications of the appellant's testimony. In material aspects it was the same as his confessions made prior to the trial. Nor have we set forth the ample evidence introduced by the state tending to establish the appellant's guilt. We think the appellant's testimony suffices to show the general background of this case.

Counsel for appellant has argued some seven points as constituting error in the trial below. These points relate to rulings of the court below as to the reception of certain testimony over appellant's objections, or the sustaining of the state's objections to questions propounded by appellant's counsel.

The appellant's own testimony given under oath in the trial below establishes beyond question his guilt of murder in the first degree. This without resort to the evidence presented by the state also establishing appellant's guilt beyond all reasonable doubt. The jury so found, and imposed the minimum punishment allowable for murder in the first degree. Section 318, Title 14, Code of Alabama 1940.

In no event could it be deemed that this appellant was probably injured in any substantial right by any of the rulings insisted upon. No purpose would be served by a discussion of these points, and, without consideration of whether they do or do not contain merit, we lay them aside. Paul v. State, 21 Ala.App. 125, 105 So. 912; Vaughan v. State, 21 Ala.App. 204, 107 So. 797; Howell v. State, 28 Ala.App. 249, 182 So. 96; Flandell v. State, 31 Ala.App. 520, 19 So.2d 401; Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150; Wheeler and Patton v. United States, 82 U.S.App.D.C. 363, 165 F.2d 225, cert. denied, Patton v. United States, 333 U.S. 830, 68 S.Ct. 448, 92 L.Ed. 1115; Sec. 389, Title 15, Code of Alabama 1940.

In our considerations we have not overlooked Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171. This case involved the admission into evidence of incriminating exhibits illegally seized by a police officer. The Supreme Court of Errors of Connecticut held that in view of the accused's full confession of the offense, the introduction of such exhibits was harmless error. A majority of the Justices of the United States Supreme Court concurred in the decision reversing the Connecticut court, taking the view that the admission of these exhibits was not harmless error. As was observed in Boulden v.

State, 278 Ala. 437, 179 So.2d 20, "We are not certain of the full import of the Fahy case."

Regardless of this lack of certitude, we are clear that *Fahy* can have no application to the present case in that there is not here involved any question of the voluntariness of the confessions, nor is there any question of unconstitutionally obtained evidence.

This judgment is due to be affirmed, and it is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.