## GUY v. UNITED STATES.
### No. 7290.

United States Court of Appeals for the District of Columbia.

Decided Oct. 9, 1939.

Writ of Certiorari Denied Dec. 11, 1939.

Charles E. Ford, of Washington, D. C., for appellant.

David A. Pine, U. S. Atty., and John W. Fihelly, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Submitted to GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This appeal is from a conviction of second-degree murder. Edna Reddick died on June 5, 1938, of a traumatic cerebral hemorrhage with ensuing exhaustion. There were marks of violence on various parts of her body. She received the fatal injuries in her home, 220 Canal Street S. W., about 7 o'clock in the morning of May 26. Appellant, Frank Guy, was there; he admitted this on the stand, and he did not contend that any third person was present. He testified that he "kept company" with the deceased, had a key to her house, and usually ate breakfast there.

The government's witnesses gave the following testimony: Leila Brown lived at 222 Canal Street, next door to Edna, and knew her and Guy. About 7 o'clock in the morning of May 26 she saw Guy enter Edna's house and go upstairs. She heard him hitting Edna and heard Edna screaming, in the front room. She heard her scream "Lord have mercy, stop beating me, Frank." She heard them go to the back room, and then heard Edna scream "Stop killing me, stop fighting me." Witness went out on a shed behind her house, saw Guy "licking down on" Edna with something—not his hand, and not a stick —and heard the blows. She could not see Edna, but got a good look at Guy, and heard his voice. Edna was still screaming. The beating lasted "a good while." When Edna stopped screaming, Guy came out of Edna's house and told witness to come in. She went in. She saw a broken chair, and then knew what she had seen Guy hitting Edna with. She saw Edna on a bed, and spoke to her but got no reply. She asked Guy to let her call someone, and he replied, "No, let her stay here; you come out of here and stay out until I come back." The bed in the front room where the fight started was broken down. Guy left the premises, returned, and removed a broken bed; later that day he brought it back, and the broken part had been repaired.

Leila Brown's daughter, Maggie Halton, heard fighting in the back room of Edna's house, and heard the voices of Edna and Guy. She heard Edna crying "Frank, don't hit me no more," and heard Guy say "Shut up" a good many times. She heard him hit her so many "licks" she could not tell how many; "somebody smacking somebody or hitting somebody." Guy called her mother, and her mother entered Edna's home with him.

Elizabeth Thomas lived at 216 Canal Street. She knew Edna, and had known Guy intimately for two years. She knew the voices of both. While she was in her own house she heard Edna yelling "Murder," and heard her say "Frank, you have the money now, what are you beating me for?" She heard Frank say "Shut up." She got on a fence behind her house and "still heard hollering and heard three licks." Edna said, "Well, kill me, I have nothing to live for." The licks "didn't sound like no hand licks. It was like a board * * * hit on a person." She saw Guy in the window.

Lucy Simpson lived at 224 Canal Street. She had known Guy for three or four years, and Edna for one year. Witness, in her own kitchen, heard screaming. She went into her back yard and identified Edna's voice. She heard several hard licks, and more screaming. She heard Edna say, "Frank don't, stop fighting me, don't beat me."

Edna's daughter, Aleitha Chew, entered the house about 9 o'clock. The bed and chair were broken. Edna was lying on a mattress. She had bruises on the right side of her eye. Guy told witness repeatedly to call no doctor. He also told her he would beat her up if she reported it. About noon, Edna asked Guy why he had beaten her, and he answered that he had beaten her because she was drunk and did not fix him any breakfast. Edna asked Guy for her money, and he said he had it and would bring it later. He took the bed out, and returned with it. About noon, and again in the evening, witness asked Guy to get a doctor, and he refused. Edna said something to him about beating her, and he said he did not beat her with his fists, he took the back of a chair. Witness picked up about a handful of Edna's hair, scattered on the steps and on the bed. Witness said to Guy that he must have pulled her mother down the steps by the hair, and he said, "No, she had a fever." Her mother said to Guy that she did not think she fell, she thought he knocked her down the steps. Guy told witness not to tell Dr. Bowie that he had

beaten her mother. She heard her mother tell Dr. Brown that she fell down the steps.

Grace Coram, a sister of Edna, testified that on May 27 Guy told her, in the presence of Edna's daughter, that he had beaten Edna with the back of a chair. Evelyn Stone testified that, approximately three or four days before Edna's death, Guy told her that he beat Edna that day.

There was undisputed testimony that Edna was drunk during the night of May 25-26, and took two drinks of whiskey at about 6:10 a.m. on May 26.

Guy testified that he entered Edna's house with his key on the morning of May 26 and found her drunk; that he went downstairs, heard a noise, and found her lying at the bottom of the steps; that he carried her upstairs and she "kept hollering 'Stop Frank, stop, you are hurting me.'" He testified that Edna told Mrs. Brown that she fell down the steps. He denied that he injured Edna, or told witnesses he had beaten her.

Appellant's counsel asked Dr. Brown whether Edna told him, in her daughter's presence, on May 27, that she fell downstairs. He answered yes. Thereupon the government was allowed, over appellant's objection, to ask the witness whether Edna, or her daughter in her presence, had also in the same conversation said that Edna had been beaten and thrown downstairs by Frank Guy. He answered that Edna had not said that, but her daughter had said it in Edna's presence; that Edna thereupon said nothing; and that this was in Edna's "hearing," but he could not say "whether or not she heard." The court admitted this conversation, though it took place in the absence of appellant, on the ground that appellant had opened the subject. The court refused to permit other witnesses to testify that Edna told them on other occasions that Guy did not hit her and that she fell downstairs.

Witnesses called by appellant, who testified to nothing of importance, were asked about their criminal records; and appellant was shown by cross-examination to have been convicted of false pretenses, and to have been on parole on May 26. The court charged the jury that convictions and parole should be considered only as bearing on credibility, ·except that the effect of flight upon parole might be considered in determining what weight should be given to the fact that appellant remained in Washington.

■ Most of appellant's exceptions are clearly without merit; but we need not decide whether some technical error occurred. "The circumstances which were established by evidence confessedly competent were so conclusive as to the guilt of the prisoner, that no honest jury could refuse to convict him of the crime. * * * We are under no legal or moral obligation to assume that the jury might have rendered a false verdict of acquittal, but for the erroneous admission of other and needless evidence." People v. Gonzalez, 35 N.Y. 49, 59. Cf. Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150. "A system of necessary rules of Evidence can exist and be obeyed, without affixing indiscriminately to every contravention of them the monstrous penalty of a new trial." I Wigmore, Evidence, 2d Ed., p. 221. When guilt is clearly established by competent evidence, error in the admission or exclusion of other evidence[1] or in the charge to the jury[2] which does not affect the substantial rights of the accused[3] does not call for the reversal of a conviction. It has been held that the party who com-

[1] Segurola v. United States, 275 U.S. 106, 111, 48 S.Ct. 77, 72 L.Ed. 186; Dye v. United States, 4 Cir., 262 F. 6, 10; Sneierson v. United States, 4 Cir., 264 F. 268, 275, certiorari denied 253 U.S. 490, 40 S.Ct. 584, 64 L.Ed. 1028; Williams v. United States, 8 Cir., 265 F. 625; Smith v. United States, 8 Cir., 267 F. 665, 670, rehearing denied 8 Cir., 269 F. 365, certiorari denied 256 U.S. 690, 691, 41 S. Ct. 450, 65 L.Ed. 1173, 1174; Apt v. United States, 8 Cir., 13 F.2d 126; Quigley v. United States, 1 Cir., 19 F.2d 756; Miller v. United States, 8 Cir., 21 F.2d 32, certiorari denied 276 U.S. 621, 48 S. Ct. 301, 72 L.Ed. 735; Salerno v. United States, 8 Cir., 61 F.2d 419; United States v. Goldsmith, 2 Cir., 91 F.2d 983, certiorari denied 302 U.S. 718, 58 S.Ct. 38, 82 L.Ed. 555. Cf. Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314.

[2] Horning v. District of Columbia, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185; Lucadamo v. United States, 2 Cir., 280 F. 653, 658; Hobart v. United States, 6 Cir., 299 F. 784; Goins v. United States, 4 Cir., 99 F.2d 147, 149, certiorari granted, 306 U.S. 623, 59 S.Ct. 461, 83 L.Ed. 1028, dismissed, 306 U.S. 622, 59 S.Ct. 783, 83 L.Ed. 1027.

[3] Cf. 40 Stat. 1181, 28 U.S.C.A. § 391.

plains has the burden of showing that improperly admitted evidence is prejudicial.[4] No reason appears why the court should have admitted the various declarations of the deceased that she fell and that appellant did not hurt her, but we need not pass upon the point. Those declarations, if they had been admitted, would have been entitled to no weight. They were evidently due either to Edna's desire to shield her lover, or to the fact that drink and blows had confused her notion of what happened. The testimony of the neighbors, and appellant's admissions off the stand, cannot be so discounted. We need not decide whether, after Dr. Brown had been allowed to testify to one of Edna's favorable declarations, the court was right in admitting the unfavorable part of the same conversation; for that part was cumulative and unimportant. No evidence which was admitted over appellant's objection, or which is open to any possible objection, materially strengthened the government's case; and no evidence which was offered by appellant, and excluded, would have materially weakened the government's case.

■ The indictment is in seven counts. They charge, respectively, that appellant beat the deceased with (1) a chair, (2) a part of a chair, (3) a hard, blunt instrument, (4) a hard, sharp instrument, and (5, 6) his fists; and (7) that he dragged her down a flight of stairs, causing her head to be knocked against the stairs; causing, in each case, wounds from which she died. The jury returned a verdict of guilty "as charged in the indictment." Appellant urges that the counts are inconsistent, and that the prosecution should have been required to elect. "The question whether the prosecution should be compelled to elect was a matter purely within the discretion of the court." Pierce v. United States, 160 U.S. 355, 356, 16 S.Ct. 321, 40 L.Ed. 454.

Affirmed.

---

[4] Valli v. United States, 1 Cir., 94 F. 2d 687, certiorari granted 303 U.S. 632, 58 S.Ct. 760, 82 L.Ed. 1092, dismissed 304 U.S. 586, 58 S.Ct. 1053, 82 L.Ed. 1547.