**Robert Lee CATLIN, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 13252.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 20, 1956.

Decided Nov. 8, 1957.

Mr. James L. Highsaw, Jr., Washington, D. C. (appointed by this Court), for appellant.

Mr. Fred L. McIntyre, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Lewis Carroll and Arthur J. McLaughlin, Asst. U. S. Attys., were on the brief, for appellee. Mr. Leo A. Rover, U. S. Atty., at the time record was filed, also entered an appearance for appellee.

Before WILBUR K. MILLER, FAHY and BURGER, Circuit Judges.

PER CURIAM.

■ In Lyles v. United States, 102 U.S.App.D.C. ——, —— F.2d ——, the Court sitting *en banc* has held that, in a case where the defense of insanity is fairly raised and it does not appear that the defendant does not desire such an instruction, it is error for the trial judge not to inform the jury that a verdict of not guilty by reason of insanity,

> "means that the accused will be confined in a hospital for the mentally ill until the superintendent has certified, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or to others, in which event and at which time the court shall order his release either unconditionally or under such conditions as the court may see fit." [1]

In the present case the defense of insanity was fairly raised, and defense counsel in his argument to the jury sought to advise the jury of the consequence of a verdict of not guilty by rea-

1. No precise form of instruction was prescribed. See 69 Stat. 610, D.C.Code § 24–301 (Supp. V, 1956).

son of insanity. It follows that it cannot be said defendant did not wish the instruction. Upon the authority of Lyles, therefore, we reverse and remand for a new trial. We point out, however, that the better practice is for the trial judge, rather than for counsel, to give the explanation to the jury.

Questions regarding the procedure for determining appellant's mental competency to stand trial, which arose because of changes in the statute while the proceedings were under way,[2] need not be decided since they are unlikely to arise again. In event of a new trial if appellant's competency to stand trial need be determined the proceedings would necessarily fall within the present statute.

■ Appellant complains that the court's charge on the defense of insanity did not include a requested instruction that if the jury should find that at the time the crime was alleged to have been committed Catlin was suffering from a mental disease to which the commission of the offense was attributable it should find him not guilty by reason of insanity even though the jury should further find that he was able to distinguish right from wrong and did not act under an irresistible impulse. There was no evidence with respect to appellant's ability to distinguish right from wrong, or that he acted by reason of an irresistible impulse. There was accordingly no need for the trial judge to go into these matters.

Reversed and remanded.

WILBUR K. MILLER, Circuit Judge (dissenting).

This appellant was indicted in May, 1955, for assault with intent to commit robbery and was tried in October of that year. The proof showed he had viciously attacked an elderly woman in a downtown park. Rejecting his plea that he was insane when he committed the crime, the jury found Catlin guilty as charged. This court now reverses the conviction because the trial judge did not permit defense counsel in his argument to tell the jury what would be done with the defendant if he were acquitted by reason of insanity. For reasons to be stated, I think that the point is not properly presented here; and that, if it is before us, the trial judge did not err but acted in accordance with the law as it then existed. So, I dissent.

The trial court's refusal to permit the argument is held reversible error on the authority of Lyles v. United States, Oct. 25, 1957, 102 U.S.App.D.C. ——, —— F.2d ——. There a majority of this court announced that, when the defense is insanity, the trial court must—on pain of reversal—tell the jury how the defendant will be dealt with if he is acquitted on that ground. They added, however, that if the defendant does not want the jury to have that information, it shall not be given to them. But they did not say whether giving the information over his protest requires reversal.

Thus, rather curiously, the defendant is to decide whether the jury shall be informed of the consequences of an acquittal because of insanity, although the Lyles majority said, "We think *the jury has a right to know* the meaning of this possible verdict * * *." (My emphasis.) The right is denied them, however, if the defendant does not want them to know.

The only reason assigned for requiring the informational instruction is that the result of an acquittal because of insanity is not commonly understood and therefore the jury is said to be entitled to the information. It follows that the only purpose of the instruction is to satisfy what the Lyles majority apparently regarded as the natural curiosity of the jurors as to what will hap-

2. The proceedings were initiated and pursued in May, June, and the early days of August 1955, when 18 U.S.C. § 4244 was in effect, but were concluded on August 18, 1955, when said section had been superseded by Pub.L. No. 313, 84th Cong., 1st Sess. (Aug. 9, 1955), 69 Stat. 610, D.C.Code § 24–301 (Supp. V, 1956).

pen to the defendant if they acquit him because of insanity.

Significantly, it is not said that the jury may or should take the information into account in reaching a verdict. Obviously, I think they should not allow it to play a part in their determination of the factual issue concerning insanity. I suppose none will say such determination should depend to any extent on whether the jurors approve of the legal consequences of their verdict.

That being so, I think Judge Bastian wisely suggested in his separate Lyles opinion that, if such information must be given to the jurors, they should be warned not to let it influence their decision, which is to be based on the evidence only. If that warning were given, the instruction would be identified as no more than a news item, which is all it can properly be called. Unfortunately the Lyles majority did not adopt Judge Bastian's suggestion and so left it for the jury to suppose that the information contained in the instruction could and should play a part in the formation of a verdict.

So, the holding is that the defendant may, if he chooses, require the trial judge to give the informational instruction, without any explanation as to its purpose or the use which the jury may or should make of it. The critical question here is whether the ruling requires or even justifies reversal of Catlin's conviction. I suggest that it does neither, for two reasons: (1) the point was not properly preserved for appeal; and (2) the Lyles holding is only prospectively effective. These reasons will be discussed separately.

1. Catlin did not request that an instruction concerning the consequences of an insanity acquittal be given, and did not complain of its omission after the trial judge completed his charge to the jury. Consequently, under Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., he cannot complain to us on that score. My brothers of the majority say that, because defense counsel in his argument sought to advise the jury of the consequences of a verdict of not guilty by reason of insanity, "it cannot be said defendant did not wish the instruction."

Perhaps their inference satisfies the Lyles rule, but I suggest it does not sufficiently meet the requirements of Rule 30 to enable the appellant to raise the point here. It would have been easy for defense counsel to ask the court to give the instruction which he himself was not permitted to give, and at the conclusion of the charge to ask that it be added. Probably counsel thought it would be futile to do so; but anticipation of the court's refusal did not excuse him from making the requests required by the Rule as conditions precedent to making the point on appeal.

2. The Lyles ruling is by its terms applicable only to future cases. Having only prospective effect it cannot properly be relied upon as a reason for reversing Catlin's conviction, which occurred nearly two years before its announcement. This is apparent from the language of the Lyles holding, which I quote:

"Sometimes a defendant may not want such an instruction given. If that appears affirmatively on the record we would not regard failure to give it as grounds for reversal. Otherwise, whenever *hereafter* the defense of insanity is fairly raised, the trial judge shall instruct the jury as to the legal meaning of a verdict of not guilty by reason of insanity in accordance with the view expressed in this opinion." (My emphasis.)

This is simply the promulgation of a new procedural requirement to be followed in the future. It was not intended to be, and therefore is not, retroactive in effect. Consequently, the new ruling neither requires nor justifies the majority's reversal of Catlin's conviction.

Since the Lyles rule is inapplicable here, it is necessary to ascertain what the law of this jurisdiction was in October, 1955, when Catlin was tried, in

order to determine whether the trial judge erred in not permitting counsel to instruct the jury concerning the consequences of an acquittal because of insanity. For this purpose I need go no further than the Lyles opinion, which thus describes the pre-existing rule before extending it:

"* * * [T]he doctrine, well established and sound, [is] that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation. * *"

This doctrine of course included a verdict of not guilty because of insanity, for the jury has no more to say about the treatment of the prisoner after such a verdict than it has when he is found guilty. Furthermore, unless the previously effective doctrine did extend to that verdict, there was no occasion for the Lyles pronouncement that hereafter the jury must know its consequences unless the defendant rules otherwise.

So I think Judge McGuire, who presided in Catlin's trial, acted in accordance with the law as it then existed when he refused to allow defense counsel to instruct the jury as to how Catlin would be dealt with if acquitted because of insanity. In reaching this conclusion, I have not overlooked the following statement made in Taylor v. United States,[1] a few months before Catlin's trial:

"The appellant says the judge told the jury, in effect, that if the appellant was acquitted he would go free. We think he did not convey that erroneous idea. But we think that when an accused person has pleaded insanity, counsel may and the judge should inform the jury that if he is acquitted by reason of insanity he will be presumed to be insane and may be confined in a

'hospital for the insane' as long as 'the public safety and * * * [his] welfare' require. Though this fact has no theoretical bearing on the jury's verdict it may have a practical bearing."

The quoted passage recognizes the principle that the jury is not legally concerned with the consequences if it finds a defendant not guilty because of insanity. Perhaps that is why its language is more nearly precatory than peremptory. It is that "the judge should" instead of "the judge must." It does not purport to establish a new rule, as does the Lyles opinion, the violation of which in any future case will cause reversal. I think the statement is no more than an *obiter* remark by a divided court[2] which did not require Judge McGuire to depart from the "well established and sound" doctrine which then prevailed.

Another phase of the majority opinion here, embodied in its closing paragraph, causes me concern. It deals with appellant's charge that the court erred in refusing to instruct approximately as follows: If the jury should find that Catlin's commission of the crime was attributable to a mental disease from which he was then suffering, it should find him not guilty by reason of insanity *even though the jury should further find that he was able to distinguish right from wrong and did not act under an irresistible impulse.* My brothers correctly reject this assignment of error, but they do so for a reason with which I cannot agree. They say:

"* * * There was no evidence with respect to appellant's ability to distinguish right from wrong, or that he acted by reason of an irresistible impulse. There was accordingly no need for the trial judge to go into these matters."

1. April, 1955, 95 U.S.App.D.C. 373, 379, 222 F.2d 398, 404.

2. The dissenting judge did not expressly disagree with the quoted statement. I think it fair to say he did disagree,

however, because he is a co-author of the Lyles opinion which in effect disapproves of the Taylor doctrine by extending it to make it show—inadequately, I think—"the other side of the coin."

This seems to mean, or at least may be construed by some to mean, that if there had been such evidence, the requested instruction should have been given. This possible implication alarms me, not only because it is unsound, but also because it may be a step toward an ultimate holding that all criminals are mentally disturbed and should receive treatment instead of punishment.

I think the requested instruction was wholly irrational. If the jury believed Catlin could distinguish between right and wrong and did not act under an impulse he could not resist, there was no basis for concluding that the criminal act, which was therefore knowingly, consciously and deliberately done, was the product of a mental defect or disorder. If the first Durham case, (Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430)—in the decision of which I had no part—means that a jury may acquit on the ground of insanity because the defendant had some mental disease or defect which did not prevent him from distinguishing right from wrong and did not irresistibly move him nevertheless to do the wrong, then I think the Durham decision is unsound and should be overruled. One who knows that what he is doing is wrong, but chooses freely and voluntarily to do it, should be held criminally responsible for his act even though he thinks the moon is made of green cheese. I do not understand how, in such circumstances, the crime can be said to have been the product of a mental defect, disease, disorder or disturbance.

When the Durham decision introduced the New Hampshire "product" theory into the law of this jurisdiction, it adopted what has been aptly called "an abstract, indefinite generality," [3] which trial judges have trouble in defining, and which tends to confuse the juries who are instructed concerning it.

The Durham rule purports not to discard, but to add something to, the old tests, which were: (a) whether the defendant, because of some mental infirmity, could not distinguish between right and wrong; and (b) if he could so distinguish, whether because of a mental infirmity he could not refrain from doing wrong. The nature of the added element is so unclear that the Durham rule lends itself to various interpretations, such as the theory of this appellant that a mental disease or defect may "produce" a crime, although the criminal knows perfectly well that what he is doing is wrong, but nevertheless knowingly and willfully chooses to do it—not at all because of the compulsion of mental illness. I suggest that nothing should have been added to the old touchstones, which are simple and concrete enough for laymen to understand and apply. Stated in varying forms which are in essence the same, these tests are considered satisfactory practically throughout the nation.

This court recently attempted in Carter v. United States [4] to explain the Durham rule for the benefit of the trial judges who must try to explain it to juries. The mere fact that explanation was thought necessary is, I think, significant. The further fact that the effort at clarification ran into so many words, and itself became somewhat complicated and abstruse, shows the extent of the infirmity which the court sought to correct and the difficulty of the task it undertook.

I am sure the able judges of the District Court, whose concern it is to understand and apply the teachings of our insanity opinions, will examine the Carter clarification with conscientious care, and will attempt in good faith to follow it. Whether it will help them to frame insanity instructions which will survive later scrutiny by this court, time alone can tell.

3. Cf. Judge Holtzoff's able analysis of the Durham rule in United States v. Fielding, D.C.D.C.1957, 148 F.Supp. 46.

4. 1957, 102 U.S.App.D.C. —, 252 F.2d 608.

I think the best way to deal with the rule which requires such elaborate explanation is to discard it in favor of the pre-existing rule to which I have alluded, which did not generate so much confusion. As long as the factual issue of insanity must be determined by the jury—and I should vigorously oppose the abandonment of that method of determination—we need to have tests which can be readily understood by laymen. I think the court should restate the tests in simple unmistakable terms, stripped of tenuous technicalities.

BURGER, Circuit Judge (concurring with the opinion of the court).

I feel impelled to add a few observations concerning Judge Miller's analysis of Carter v. United States.

First, it seems quite clear that Judge Prettyman in Carter v. United States, 102 U.S.App.D.C. ——, 252 F.2d 608, was not undertaking to frame a charge to a jury or to say what they should be told. His objective was to supply a long and widely felt need for an explanation of the basis of the so-called "product test" so that trial judges would be better able to frame their own charges. Second, I think he intended to emphasize that mere presence of a mental disease or defect does not exculpate an accused, but that the disease must have a positive causal relationship, i. e., as we indicated in Carter v. United States, supra, and Douglas v. United States, 1956, 99 U.S.App.D.C. 232, 239 F.2d 52, that the disease or defect is the controlling, decisive, compelling cause of the act.

In Durham v. United States this court was not innovating a novel or untried doctrine of criminal law as perhaps some may have thought. Quite the contrary; the so-called "product test" had been in operation for nearly a century in New Hampshire before it was adopted here. Indeed, as Judge Prettyman pointed out in Carter, this jurisdiction adopted the substance of the New Hampshire Rule in 1929 in Smith v. United States, 1929, 59 App.D.C. 144, 36 F.2d 548.

The dissent is critical of the "product test" as "an abstract, indefinite generality" and of the Carter opinion for its effort to supply the very deficiencies of which the dissent complains. It may well be that the effort to clarify will not reach its goal with all readers but there is no reason why it should not add to the understanding of those who will study it with open mind, particularly those who must deal with it in the first instance in the trial courts, which under our system are the primary dispensers of justice. These are complicated, difficult and trying problems for the law enforcement officers, for the profession and for the courts, and solutions are often elusive. As with all difficult legal problems the pronouncements of Carter v. United States require concentrated, thoughtful study, and where that is given improved understanding and better administration of justice will follow.