Robert STARR, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 13865.

United States Court of Appeals
District of Columbia Circuit.

Argued on Rehearing En Banc
April 22, 1958.

Decided On Rehearing En Banc
Oct. 17, 1958.

378

Mr. E. T. Cheyfitz, Washington, D. C. (appointed by this Court), and Mr. Vincent J. Fuller, Washington, D. C., for appellant. Mr. John A. Shorter, Jr., Washington, D. C., also entered an appearance for appellant.

Mr. John W. Kern, III, Asst. U. S. Atty., for appellee. Messrs. Oliver Gasch, U. S. Atty., Lewis Carroll and Harold H. Titus, Jr., Asst. U. S. Attys., were on the brief for appellee.

Decided on Rehearing en Banc

Before EDGERTON, Chief Judge, and PRETTYMAN, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting en banc.

WILBUR K. MILLER, Circuit Judge, with whom PRETTYMAN, DANAHER, BASTIAN and BURGER, Circuit Judges, concur.

■ On the evening of June 10, 1956, Robert Starr knocked on the door of Bernice Askew's apartment and, when she answered, asked if his wife, Louvenia, was there. Upon being told she was not, Starr exhibited a butcher knife, which he took from his pocket, and said, "Baby Sis,[1] I am going to get Louvenia tonight. I guess I am going back to jail." A short time later he pursued and overtook his wife on the street and stabbed her to death with the knife. He was indicted and tried for murder in the first degree.

Having heard the evidence and having heard and observed Starr as he testified in his own defense, the jury found the accused guilty of murder, but only in the second degree. He appeals. At the trial, Starr's principal defense was insanity.[2] He first contends there was insufficient evidence of his sanity at the time of the killing to sustain his conviction. The argument must be rejected. While there was conflicting evidence on the issue, the testimony showing sanity was ample to support the verdict, as will hereinafter appear.

Three psychiatrists testified. One of them, who was introduced by the appellant, said the accused was of unsound mind at the time he killed his wife. He based this opinion on a single interview at the District jail on August 5, 1956, which lasted approximately one hour and ten minutes.

Two psychiatrists testified for the Government, both of whom had examined Starr many times during his hospitalization of about two months ending in December, 1956. Both testified that the accused was of sound mind when examined. One said he could not determine whether appellant was suffering from a psychosis when he killed his wife; but the other, the assistant chief psychiatrist at the District of Columbia General Hospital, who had examined appellant "at least ten times at some length and probably twenty times briefly," gave the opinion that the appellant was sane then and when the killing occurred, and was malingering. This doctor said, "There is nothing that would make me believe that he had been suffering from mental illness at that time [the time of the killing]."

■ Another bit of evidence which perhaps tended somewhat to show sanity at the critical time was a written statement which the appellant gave the police before he was arraigned. It is not a confession, but is exculpatory in nature, and was introduced in evidence by the prosecution to show "the state of mind of the defendant as to his alertness and as to his memory at the time he made the statement." That is to say, it was offered and received in support of the Government's burden to show the appellant was sane at the time of the killing.

The admission of this exculpatory statement, even for the limited purpose of showing sanity, is assigned as error because it was obtained some nine hours after appellant's arrest and before he was presented to a committing magistrate. It is said the statement was inadmissible under the rule of Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1359, 1 L.Ed.2d 1479. We do not so read the Mallory opinion which,

---

1. It does not appear from the record that Bernice Askew was the appellant's sister. "Baby Sis" was a nickname used generally by her acquaintances.

2. Although the appellant denied having killed his wife, there is no real question that he did so, because the act was done in the presence of numerous eyewitnesses.

speaking of the McNabb and Upshaw decisions, said that in the former

"* * * In order adequately to enforce the congressional requirement of prompt arraignment, it was deemed necessary to render inadmissible incriminating statements elicited from defendants during a period of unlawful detention."

and added that

"In Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100, which came here after the Federal Rules of Criminal Procedure had been in operation, the Court made it clear that Rule 5(a)'s standard of 'without unnecessary delay' implied no relaxation of the McNabb doctrine [McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L. Ed. 819]."

Thus the Mallory opinion excludes only "incriminating statements elicited from defendants." It follows that none of the three Supreme Court opinions mentioned applies to the present situation where the statement given by Starr was not incriminating but was clearly exculpatory.[3]

But, if the Mallory opinion be construed to hold inadmissible an exculpatory statement taken during unnecessary delay in arraignment, the question arises whether that decision changes the law concerning non-prejudicial error in the reception or rejection of evidence.

Under the law as it existed before the Mallory case was decided, the harmless error rule required that if, upon an examination of the entire record, substantial prejudice does not appear, any error must be disregarded as harmless. This is commanded by the salutary statute which Congress passed to correct the abuses that had grown up because, as one trial judge put it, courts of review had come to "tower above the trials of criminal cases as impregnable citadels of technicality."[4] The statute, which is now found in 28 U.S.C. § 2111, is as follows:

"On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

It is reflected and made specifically applicable to criminal cases in Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A., which is: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

The Supreme Court said in Berger v. United States, 1935, 295 U.S. 78, 82, 55 S.Ct. 629, 631, 79 L.Ed. 1314:

"Evidently Congress intended by the amendment to § 269 to put an end to the too rigid application, sometimes made, of the rule that error being shown, prejudice must be presumed; and to establish the more reasonable rule that if, upon an examination of the entire record, substantial prejudice does not ap-

---

3. "* * * The rules governing the reception in evidence of such admissions [exculpatory statements] are much less onerous than those concerning confessions," said Mr. Justice Justin Miller in Ercoli v. United States, 1942, 76 U.S. App.D.C. 360, 362, 131 F.2d 354, 356, speaking for himself and Justices Groner and Vinson, and citing many authorities. This rule has been restricted by Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101, but only in respect to those exculpatory statements which in fact are of the same character as confessions, i. e., statements of the accused denying guilt but admitting facts essential to prove the charge or admitting ele-

ments of the crime charged. The exculpatory statement in this case is not of that character. In fact, it was not introduced as an admission at all, but rather as evidence of rational conduct on the part of the accused shortly after the commission of the crime. See 2 Wigmore, Evidence § 228 (3d ed.); United States v. Holmes, C.C.D.Me.1858, 26 Fed. Cas. pp. 349, 354, No. 15,382; People v. David, 1939, 12 Cal.2d 639, 86 P.2d 811, 815–816.

4. Quoted by Mr. Justice Rutledge in Kotteakos v. United States, 1946, 328 U.S. 750, 759, 66 S.Ct. 1239, 1245, 90 L.Ed. 1557.

pear, the error must be regarded as harmless. See Haywood v. United States, 7 Cir., 268 F. 795, 798; Rich v. United States, 8 Cir., 271 F. 566, 569, 570."

■ The Supreme Court has also said, in Palmer v. Hoffman, 1943, 318 U.S. 109, 116, 63 S.Ct. 477, 482, 87 L.Ed. 645, 144 A.L.R. 719 [5]:

" * * * Mere 'technical errors' which do not 'affect the substantial rights of the parties' are not sufficient to set aside a jury verdict in an appellate court. 40 Stat. 1181, 28 U.S.C. § 391. He who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted. * * * "

This applies as well to a criminal case, unless a constitutional right is infringed. See Pulley v. United States, 8 Cir., 1958, 253 F.2d 796, and compare Davis v. United States, 8 Cir., 1956, 229 F.2d 181, 187, certiorari denied 351 U.S. 904, 76 S.Ct. 706, 100 L.Ed. 1441.

■ A settled rule is that "When guilt is clearly established by competent evidence, error in the admission or exclusion of other evidence or in the charge to the jury which does not affect the substantial rights of the accused does not call for the reversal of a conviction." Guy v. United States, 71 App.D.C. 89, 91–92, 107 F.2d 288, 290–291, and numerous authorities there cited, certiorari denied 1939, 308 U.S. 618, 60 S.Ct. 296, 84 L.Ed. 516; Wheeler v. United States, 1947, 82 U.S.App.D.C. 363, 165 F.2d 225, certiorari denied 1948, 333 U.S. 829, 68 S.Ct. 448; 92 L.Ed. 1115.

There is no contention here that admitting the statement violated a constitutional right. It remains then to decide whether the Mallory opinion should be construed as holding that the admission of an exculpatory statement on the issue of sanity is reversible error, even though it did not affect substantial rights of the accused and so produced no prejudice. The Mallory decision, although it reverses the conviction, does not expressly say that admission of the confession there was prejudicial. We think, however, that a holding of prejudice from the incriminatory statement is implicit in it; for in the two cases to which it refers—one as having established the rule before the adoption of the Criminal Rules and the other as having affirmed it thereafter—there was specific mention of prejudice resulting from the confessions involved.[6]

Moreover, the subsequent history of the Mallory case confirms the fact that the admission of the confession, which the Supreme Court condemned, did in fact prejudicially affect his substantial rights, for after remand to the District Court following reversal by the Supreme Court, the United States Attorney's motion to dismiss the indictment for lack of evidence, in the absence of the confession, was granted.

It is not believed, therefore, that the Supreme Court intended the Mallory opinion to hold that the erroneous admission of a confession requires reversal even though no prejudice resulted from its admission; for that would reverse the line of authorities holding otherwise and would emasculate the harmless error statute and Rule 52(a), which the Su-

5. The "harmless error" provisions of the old § 391 of Title 28, U.S.C., are now contained in Rule 61, Fed.R.Civ.P., 28 U.S.C.A., Rule 52(a), Fed.R.Crim.P., and in 28 U.S.C. § 2111, 63 Stat. 105.

6. In McNabb v. United States, 1943, 318 U.S. 332, 338, 63 S.Ct. 608, 612, 87 L. Ed. 819, it was said:

"Concededly, the admissions made by Freeman, Raymond and Benjamin [McNabb] constituted the crux of the

Government's case against them, and the convictions cannot stand if such evidence be excluded. * * * "
And in Upshaw v. United States, 1948, 335 U.S. 410–411, 69 S.Ct. 170, 93 L. Ed. 100, the Supreme Court said:

" * * * Pre-trial confessions of guilt without which petitioner could not have been convicted were admitted in evidence against his objection that they had been illegally obtained * * *."

preme Court gave no indication of intending.

The statute and the cases cited above leave open the question as to the standard which should be applied in determining whether an error has produced prejudice, except to say the determination must be made upon a consideration of the record as a whole. The answer must always be a matter of opinion. Mr. Justice Rutledge discussed the problem in Kotteakos v. United States, 1946, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557:

> " * * * [The question is] what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, *in the total setting.* [Authorities omitted.]
>
> "This must take account of what the error meant to them, not singled out and standing alone, *but in relation to all else that happened.* * *
>
> "If, when all is said and done, the conviction is sure that the error did not influence the jury, *or had but very slight effect,* the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. * * * But if one cannot say, *with fair assurance,* after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."
(Emphasis supplied.)

Applying this standard to the present case, we are clear that admitting Starr's statement in evidence on the issue of sanity did not affect his substantial rights. We have already pointed out that there was ample competent evidence, in addition to what Starr said, from which the jury could conclude he was sane when he did the killing. Moreover, the statement had little probative value for the purpose for which it was introduced and admitted, and it is inconceivable that the statement had more than a very slight effect—if indeed it had any—upon the jury's determination of sanity. Its admission into evidence was, therefore, not prejudicial.

■ A third ground for reversal relied upon by the appellant is that the District Court erroneously instructed the jury as to the consequences of a verdict of not guilty by reason of insanity. The court told the jury:

> "In the event your verdict is not guilty by reason of insanity, the defendant will be committed to St. Elizabeths Hospital, there to remain until such time as it is established that he is no longer insane."

This, the appellant says, was insufficient and prejudicial because it did not contain the additional words "and will not, in the reasonable future, be dangerous to himself or others," set forth in one of the opinions in Lyles v. United States, 1957, 103 U.S.App.D.C. 22, 254 F.2d 725, 728. He defines prejudice therefrom by saying, "A jury considering the verdicts possible may well have avoided such a verdict from fear that appellant would soon be found sane and returned to the community when in point of fact he was dangerous to himself or others." The point is not well taken. It assumes that a defendant acquitted because of insanity and committed to a mental hospital may be retained therein, even though thereafter found to have recovered his sanity, because he is thought to be dangerous to himself or others.

■■ A sane person, *i. e.,* one free of mental disease or defect, cannot be confined in a mental hospital under § 24–301, D.C.Code (1951), simply because he is thought to be potentially dangerous

if released. His dangerous tendencies must be attributable to an abnormal mental condition if he is to be retained in confinement on that account under the Act.[7] The only rational reading of the statute is that a defendant, acquitted because of insanity and committed to a mental hospital because of that verdict, may not be released if, despite some recovery, the doctors certify and in the exercise of its own function the court finds he is, and in the reasonably foreseeable future will be, dangerous because of mental disease or defect. In other words, if a mental disease or defect, which led to a verdict of not guilty by reason of insanity, is still present to a degree rendering the defendant potentially dangerous,[8] the statute requires that he be confined until it is found by the court that he has recovered his sanity and no longer has an abnormal mental condition which causes him to be potentially dangerous.

Giving the instruction in that form cannot be said to have been prejudicial error; the Lyles case, by its own terms being prospective only, does not apply.

The final reason for reversal advanced by appellant is that distributing to the panel, from which were selected the jurors who found Starr guilty, a pamphlet entitled "Jury Service" disqualified them in the present case. In rejecting the argument, it is enough to say—as is frankly stated by appellant—that the record does not show that or any other pamphlet was distributed to the jurors. But see the opinion of Chief Judge Simons for the Sixth Circuit in Horton v. United States, 1958, 256 F.2d 138.

Affirmed.

BAZELON, Circuit Judge (dissenting).

My opinion that this conviction should be reversed has already been expressed in connection with the original hearing of this appeal before a division of the court. That opinion in which Judge Washington joined and from which Judge Miller dissented, was filed February 13, 1958, and appears as an appendix hereto. I wish now only to record my dissent from the judgment of the majority on rehearing in banc affirming the conviction and to comment on certain of the majority's conclusions which seem to me clearly erroneous.

Chief Judge EDGERTON and Circuit Judges FAHY and WASHINGTON authorize me to say that they join in the following comments.

I.

The majority concludes that a statement taken by the police from an arrested person during an unnecessary delay in arraignment is not inadmissible under Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, if the statement is "exculpatory" rather than "incriminating." It argues by analogy to the rules concerning the need for corroboration of extra-judicial admissions and cites Ercoli v. United States, 1942, 76 U.S.App.D.C. 360, 362, 131 F.2d 354, 356, in which we said: "The rules governing the reception in evidence of such admissions [exculpatory statements] are much less onerous than those concerning confessions." But, to the extent that there is a valid analogy, Ercoli has been overruled as to the cited point in Opper v. United States, 1954,

7. Overholser v. Leach, 1958, 103 U.S. App.D.C. 289, 257 F.2d 667.

8. It should be noted that in this jurisdiction the terms "mental disease" and "mental defect" have been differentiated as follows: "We use 'disease' in the sense of a condition which is considered capable of either improving or deteriorating. We use 'defect' in the sense of a condition which is not considered capable of either improving or deteriorating * * *." Durham v. United States, 1954, 94 U.S.App.D.C. 228, 241, 214 F.2d 862, 875, 45 A.L.R.2d 1430. Hence, a person found not guilty by reason of insanity due to a mental defect, and confined under § 24–301, might well remain in confinement indefinitely if he is potentially dangerous because of such mental defect.

348 U.S. 84, 91–92, 75 S.Ct. 158, 164, 99 L.Ed. 101, in which the Supreme Court said: "We conclude that exculpatory statements,[1] however, may not differ from other admissions of incriminating facts. Given when the accused is under suspicion, they become questionable just as testimony by witnesses to other extrajudicial statements of the accused." See my dissent in Green v. United States, 1956, 98 U.S.App.D.C. 413, 420–421, note 2, 236 F.2d 708, 715–716 note 2, reversed on other grounds 1957, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199.

Moreover, sanity, once placed in issue, as it was here, becomes an "element necessary to constitute the crime" and the defendant cannot be declared guilty of the crime unless the Government proves his sanity beyond a reasonable doubt, just as it must with respect to every other element of the crime. Davis v. United States, 1895, 160 U.S. 469, 487–488, 16 S.Ct. 353, 40 L.Ed. 499. Evidence tending to prove sanity is, therefore, incriminating evidence in the circumstances here.

## II.

I agree with the statement in the majority opinion that it would not be "prejudicial error" to instruct the jury, as to the consequences of a verdict of not guilty by reason of insanity, that the defendant will remain "confined until it is found by the court that he has recovered his sanity and no longer has an abnormal mental condition which causes him to be potentially dangerous." Indeed, such an instruction would not be error at all.

But that instruction was not given here. On the contrary, the judge charged the jury:

> In the event your verdict is not guilty by reason of insanity, the defendant will be committed to St. Elizabeths Hospital, there to remain until such time as it is established that he is no longer insane.

Altogether lacking in the instruction given was any hint that a determination of public safety would play any part in the defendant's release.

Whether or not, in cases tried before our decision in Lyles v. United States, 1957, 103 U.S.App.D.C. 22, 254 F.2d 725, certiorari denied 1958, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067, it was mandatory to give an instruction as to the consequences of an insanity verdict, I think the giving of an incorrect instruction on that question was as erroneous and as prejudicial before Lyles as after. See Catlin v. United States, 1957, 102 U.S.App.D.C. 127, 251 F.2d 368, and my dissent in Bradley v. United States, 1957, 102 U.S.App.D.C. 17, 21, 249 F.2d 922, 926.

The majority concludes, however, that leaving out the safety element of the test was the logical thing to do, because, as a matter of law, mere danger will not justify confinement if the defendant has "recovered his sanity." As to a defendant who has successfully pleaded insanity, this view was, by necessary implication, rejected in Lyles. The present majority avoids expressly overruling Lyles, but points out that Lyles, "being prospective only, does not apply."

That an instruction regarding release, if given, must contain an explanation of the public safety element, has been understood since Taylor v. United States, 1955, 95 U.S.App.D.C. 373, 379, 222 F.2d 398, 404. Lyles did not, by making the instruction regarding release mandatory for the future, eliminate the public safety component. It expressly included it. So does the statute. See my dissent in Tatum v. United States, 1957, 101 U.S. App.D.C. 373, 377, 249 F.2d 129, 133, certiorari denied 1958, 356 U.S. 943, 78 S.Ct. 788, 2 L.Ed.2d 818, and Bradley v. United States, supra. The effect of the present majority decision is that, in

---

1. The Court defined such statements as "those that explain actions rather than admit guilt."

cases tried before Lyles, the public safety component was unnecessary.

Since, by this time, there cannot be very many pre-Lyles cases left to be heard on appeal, it probably matters very little to the law that the majority has carved out a temporal no-man's-land, somewhere between Taylor and Lyles. It matters considerably, however, to this appellant. I therefore dissent.

## Appendix

BAZELON, Circuit Judge.

Appellant was tried for first degree murder. His principal defense was insanity.[1] On February 8, 1957, the jury found him guilty of second degree murder and in due course he was sentenced to imprisonment for eight to twenty-five years. In this appeal from the judgment of conviction he assigns two principal errors: (1) that the trial court failed to direct a judgment of acquittal by reason of insanity; and (2) that the court admitted into evidence a written statement which the police obtained from appellant while he was unlawfully detained.

From the conflicting evidence on the issue of sanity the jury could have concluded beyond a reasonable doubt that appellant was sane. The submission of that issue to the jury was therefore clearly correct.

Appellant's second allegation of error, however, is of more substance. Appellant was arrested at about 1:00 a.m., on June 11, 1956. He was questioned for some time at the scene of the arrest and was then removed to the precinct station. About an hour later he was questioned again at the precinct station for about 45 minutes. Then he was removed to the central cell-block at police headquarters to await additional questioning by the arresting officer at the latter's "very earliest opportunity." It was about 7:30 a.m. before that oppor-

tunity arose. Appellant was then brought to the office of the Homicide Squad and, at 8:10 a.m., there began the typing of a written statement. The statement, a transcript of questions and answers, was completed at 10:20 a.m., and was then signed by appellant. Not until later that day, the exact time not being shown in the record, did the police bring appellant before a committing magistrate as Rule 5, Fed.R.Crim.P., 18 U.S.C.A., requires them to do after arrest "without unnecessary delay." Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1360, 1 L.Ed.2d 1479. There is no reading of Mallory which makes appellant's written statement admissible in evidence. Cf. Watson v. United States, 1957, 101 U.S.App.D.C. 350, 249 F.2d 106.

But the Government argues that the judgment should nevertheless be affirmed because of lack of proper objection to the offer of the statement below and because the error of receiving the statement was not prejudicial.

When the statement was offered in evidence defense counsel objected. Whether the ground of the objection was the McNabb[2]-Mallory rule or that the statement was obtained through coercion is left somewhat obscure by the record. The Government says the objection was on the ground of coercion and that appellant should therefore be foreclosed from raising for the first time on appeal the McNabb-Mallory objection. See Lawson v. United States, 1957, 101 U.S. App.D.C. 332, 248 F.2d 654. Before the Supreme Court's Mallory decision, however, the view was not uncommon that the McNabb rule was essentially a variant of the coerced confession rule. See, e.g., Rettig v. United States, 1956, 99 U.S.App.D.C. 295, 300–301, 302, 239 F.2d 916, 921–922, 923. That was the view taken by the Government itself before Mallory. Indeed, even in its brief in this

---

1. Though appellant denied the homicide, there was no serious question that he had committed it, because the act was done in the presence of numerous eyewitnesses.

2. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

case, written after Mallory, the Government still argues that it was incumbent upon appellant to show that the delay in arraignment was "the cause" of his statement. Realism and justice dictate the conclusion that the McNabb-Mallory point is properly preserved in a pre-Mallory trial by an objection based on the theory of coercion.

In contending that receiving the statement in evidence was not prejudicial error, the Government argues (a) that the statement was exculpatory; (b) that it was consistent with appellant's testimony at the trial; and (c) that, apart from the statement, there was overwhelming proof that appellant committed the homicide. These arguments, while true, do not persuade us that the error of receiving the statement was not prejudicial. The statement was not offered on the issue of whether appellant committed the homicide, but rather to show "the state of mind of the defendant as to his alertness and as to his memory at the time that he made the statement." In view of the conflicting testimony as to appellant's sanity at the time of the homicide, the statement he made some nine hours after the event might have influenced the jury to determine that he was then sane. Having offered it for that purpose, the Government can hardly claim now that it was not effective. Bram v. United States, 1897, 168 U.S. 532, 541, 18 S.Ct. 183, 42 L.Ed. 568.

The conviction must be reversed and the case remanded for a new trial for second degree murder or some lesser offense, see Green v. United States, 1957, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, at which the improperly taken statement of appellant shall not be received in evidence. This disposition of the case makes it unnecessary to consider appellant's other claims of error.

Reversed and remanded.

WILBUR K. MILLER, Circuit Judge, dissents.