Charles Henry TURPIN, Jr., Appellant

v.

UNITED STATES of America, Appellee.

No. 15661.

United States Court of Appeals District of Columbia Circuit.

Argued June 20, 1960.

Decided July 14, 1960.

Petition for Rehearing Denied Aug. 2, 1960.

———◆———

Mr. William B. Bryant, Washington, D. C., for appellant.

Mr. Nathan J. Paulson, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before PRETTYMAN, Chief Judge, and BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Appellant age 19 was indicted for first degree murder. He was convicted of manslaughter and sentenced under the Federal Youth Corrections Act, 18 U.S.C.A. § 5005 et seq. Three grounds are urged for reversal.

Appellant claims that two statements made by him and received in evidence against him were inadmissible under the Mallory Rule.[1] The first statement was made to the police prior to the preliminary hearing before a committing magistrate. The second statement was made to the victim's widow in the presence of police officers, shortly after the preliminary hearing.

Shortly after 9:35 p. m. on the day of the homicide, the deceased looked out the window of his home and saw someone apparently tampering with his car or near his car. Dressed only in his underwear he went out of the house, approached the car, and fired a shot in the air. Appellant and several others ran off. One of the members of this group testified as a witness and said that on that day he had gone with two friends to the scene of the homicide for the purpose, among other things, of getting some "fender skirts" from automobiles. This witness had a criminal record for stealing and stripping automobiles. They met appellant near that point and noticed he had a gun in his belt, which he showed to them. The witness, who was among the group which fled after the deceased fired a shot in the air, said that about 5 minutes later they heard about 4 additional gun shots. Another witness fixed the additional shots at 5 shots. In the interval between the time the boys ran away and the time of the fatal shooting the deceased had returned to his apartment, dressed, and then came back to the street. When he was later found dead, no weapons of any kind were found on his person or nearby.

Appellant was arrested at or about 12 or 12:30 p. m. and questioned by the police. He made no statement as to the shooting. About 3 p. m. he said he would tell his version of the shooting if he could first talk with his wife. Although police tried promptly to find her, she was not located until about 5:15 p. m. Upon talking with his wife, appellant made an exculpatory statement to the police which incorporated his later claim of self defense. Some hours later, he was taken before a Municipal Court Judge and, after being charged, was advised as to his right to counsel and to remain silent.

The circumstances surrounding his second statement were that when appellant left the preliminary hearing and was still in the courthouse, he was confronted by the victim's widow and at once said to her: "Mrs. Buckson, I am sorry I shot your husband. I am sorry. * * * I didn't intend for it to be that way. * * I thought he still had the gun, so I shot him. * * * I don't know how many shots I fired; I just turned in [sic] loose. * * * I am sorry that things turned out the way they did. * * * But your husband shot first."

The questions raised by the admission of the statements made to the police and the later statement made to the victim's

---

1. Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. At the trial defense counsel disclaimed reliance on the Mallory case urging that

Trilling v. United States, 1958, 104 U.S. App.D.C. 159, 260 F.2d 677, required the evidence to be rejected.

widow must be viewed in the light of the defense. The appellant contends that to admit the statements made to the widow at a time when he was emotionally upset and distraught violates the prohibitions implicit in the Mallory case, supra, Jackson v. United States, 1959, 106 U.S.App. D.C. 396, 273 F.2d 521, and Trilling v. United States, 1958, 104 U.S.App.D.C. 159, 260 F.2d 677. He contends that, in all events, a post preliminary hearing utterance cannot be received in evidence unless it is made at a time after the accused has had a chance to reflect and deliberate. Yet in his opening statement to the jury, before any evidence was introduced by the government, appellant's counsel advised the jury of his claim of self defense. While this statement of counsel was, of course, not evidence, and constituted no admission, it was nevertheless consistent with appellants' original statement to the police and his spontaneous utterances to the victim's widow—uttered shortly after he received the judicial warning at the preliminary hearing. Those statements of appellant told the jury nothing more than appellant's opening statement at the trial told them, namely, that appellant shot the deceased in self defense. Indeed, the very nature of the statements showed that from the moment of the shooting appellant consistently claimed this theory.

■ It is argued that absent the statements the prosecution had a "weak" case. But it should be noted that witnesses placed him on the scene of the shooting with a gun in his belt, that he fled with the admitted culprits, and that the gun was found in his home and was identified as the gun which killed the deceased. This is hardly a "weak" case and, in all the circumstances, the election to plead self defense was not only sound but was supported by the spontaneous utterances of appellant suggesting that the self defense theory was one sincerely urged by him. On this record it would be incredible to allow the defendant one trial to "try out" the self defense theory and another to explore perhaps a different one. The statements now complained of were cumulative. Cf. Starr v. United States, 1958, 105 U.S.App.D.C. 91, 264 F.2d 377, certiorari denied, 1959, 359 U.S. 936, 79 S.Ct. 652, 3 L.Ed.2d 639. Moreover they were consistent with, if not essential to and in aid of, his defense.

That the jury gave some credence to appellant's theory is suggested to a degree by the return of the lesser included offense of manslaughter in circumstances where he might well have been convicted of first degree murder. If all the statements explaining the homicide had been believed, the jury might well have returned a verdict of not guilty.

Appellant's contentions concerning the second statement made to the victim's widow after he had received a judicial warning are in part answered by United States v. Bayer, 1947, 331 U.S. 532, 541, 67 S.Ct. 1394, 91 L.Ed. 1654, holding that the making of a presumably inadmissible statement does not perpetually disable an accused from thereafter making a usable confession. However, the nature of appellant's statements was such that they do not come within the orbit of the type of statement dealt with in Bayer. See also Goldsmith v. United States, 1960, 107 U.S.App.D.C. 305, 277 F.2d 335; Guy v. United States, 71 App.D.C. 89, 107 F.2d 288, certiorari denied, 1939, 308 U.S. 618, 60 S.Ct. 296, 84 L.Ed. 516.

■ Appellant next urges that when the jury asked for a map of the neighborhood in which the homicide occurred, which had not been offered in evidence by either side, appellant's counsel, out of the presence of the jury, objected. The court thereupon advised the jury that such a map, not having been offered by either of the parties, could not be made available without the consent of both counsel and that one counsel was unwilling to consent. The court specifically told the jury that it would not be proper for the court to advise them which counsel had withheld consent. On this record it is difficult to see how the jury could have assumed that it was the appellant's counsel who had objected, or that this information, if known to the jury, prejudiced appellant. No objection was made

by appellant at the time and no record was made that defense counsel then considered that the jury had overheard any of the bench conference.

Finally, the appellant objects to the court's supplementary charge on his defense when the jury asked for additional instructions on that score. We have examined both the original and the supplementary charge and find no error in either.

Affirmed.